UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SUPERIOR LANDSCAPE                   *    CIVIL ACTION
& MAINTENANCE, INC.

V.                                   *    NO. 06-4639

CHEVRON PIPE LINE COMPANY            *    SECTION "F"

ORDER AND REASONS

Before the Court is the defendant's motion for summary judgment.  For the following reasons, the motion is GRANTED in part and DENIED in part.

Background

Chevron Pipe Line Company owns and operates a pipeline terminal near Empire, Louisiana.  Because the facility is surrounded by marsh and is located on the Mississippi River, access to the facility is accomplished primarily by crew boat or barge, with the latter being the only means of transporting heavy equipment to the facility.

Superior Landscape & Maintenance, Inc. is a landscaping company that Chevron contracted to mow grass and provide other landscaping services at its facilities, including the Empire facility.  Superior provided its services using its own equipment, including tractors, mowers, and bush hogs.  The contract between

1

the parties obligated Chevron "to provide an area to house contractor equipment at the Empire Terminal." The contract obligated Superior to "[k]eep the grass and weeds mowed at the Empire Terminal at approximately 3-4 inches high," among other things. The record reflects that economic concerns by both parties prompted the contractual agreement that Superior would house its equipment at the Empire facility in an area supplied by Chevron:

> Superior did not have transportation to move the equipment to and from the facility each time maintenance was to be done on the property; and, Chevron did not want to pay additional monies to hire a barge each time Superior needed to bring its equipment to the facility.

As Hurricane Katrina approached in late August 2005, both parties became concerned about equipment stored at the Empire facility. Chevron's standard procedures include using barges to remove its own equipment from the facility. On one occasion years ago, Chevron allowed Superior to include its landscaping equipment on a barge with Chevron's equipment because sufficient room existed. But in August 2005, no barges were available at all to move any equipment, belonging to either Chevron or Superior, from the Empire facility. Superior was able to contact security personnel at the Empire facility and arrange for one Superior Landscaping employee to enter the facility to move its equipment to the far side of the island. Unfortunately, even this move did not protect the equipment from Hurricane Katrina's tidal surge.

After the hurricane, Superior attempted on several occasions to find out what had happened to the equipment, with no success because the area was too damaged and access was prohibited. In

late November 2005, Superior was informed by a Chevron crew boat captain that all of the equipment had been bulldozed into a scrap graveyard and Superior was denied access to the Empire facility. Superior was granted access to the facility in December 2005, and observed that its equipment, previously worth approximately $60,000, had been flooded by the hurricane and then bulldozed as scrap metal, completely irreparable and unusable.

Chevron offered Superior a continued contract to provide landscaping services and assured Superior that Chevron would transport the landscaping equipment from the facility in the event that another hurricane threatened the facility. Superior declined the contract because it did not have the equipment to perform the work.

Superior sued Chevron on August 24, 2006, alleging breach of contract and conversion. Chevron now moves for summary judgment, stating that Superior's claims fail as a matter of law.

I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury

could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, she must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

"In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." Amoco Prod. Co. v. Texas Meridian

Resources Exploration, Inc., 180 F.3d 664, 668 (5th Cir. 1999). Under Louisiana law, whether a contract is ambiguous is an issue of law for the Court. Hampton v. Hampton, Inc., 713 So.2d 1185, 1189 (La.App. 1998). And, the interpretation of an unambiguous contract is an issue of law for the court. See Texas Eastern Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998).

Louisiana's statutory rules of contract construction are well-settled. Louisiana law limits the Court's authority to look beyond the four corners of an unambiguous contract. LA. CIV. CODE ANN. art 2046 (1998) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." Amoco Prod., 180 F.3d at 668-69 (quotation omitted). By contrast, "a contract is ambiguous, under Louisiana law, 'when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction.'" Texas Eastern, 145 F.3d at 741 (quoting Lloyds of London v. Transcontinental Pipe Line Corp., 101 F.3d 425, 429 (5th Cir. 1996)).

Under settled principles of contract construction, the Court is tasked with determining the common intent of the parties. LA. CIV. CODE ANN. art. 2045. To accomplish this, the Court reads contracts for their plain meaning. LA. CIV. CODE ANN. art. 2047. In addition, the Court must construe "[e]ach provision...in light of

5

the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE ANN. art. 2050. The Court must interpret contract provisions susceptible to different meanings "to avoid neutralizing or ignoring any of them or treating them as surplusage" and "to preserve validity [of the contract]." Lambert v. Maryland Cas. Co., 418 So.2d 553, 559-60 (La. 1982); Gibbs Constr. Co. v. Thomas, 500 So.2d 764, 769 (La. 1987).

The Service Agreement between Chevron Pipe Line and Superior states simply:

```
Part II – WORK REQUIREMENTS:
2.1        Technical Requirements
2.1.3      CPL will provide an area to house contractor
           equipment at Empire Terminal.
...
2.1.5      Contractor is to own and maintain all
           equipment.
```

Noting that Superior's complaint is silent regarding precisely how Chevron breached the contract, Chevron contends that the contract's plain language does not require it to protect Superior's equipment from all perils, but only to provide a space to store the equipment. In its opposition, Superior argues that "to house" equipment means that Chevron had a duty to safeguard the equipment, particularly when it controls all access to and from the facility. Superior argues that the phrase "to house" is ambiguous and, therefore, asks the Court to rely on extrinsic evidence including the conduct and course of dealing between the parties to assess the expectations of the parties when they entered into the agreement.

But when the Court interprets this policy as a whole, the Court does not find an ambiguity at all. The contract does not

6

obligate Chevron "to house" the equipment, but rather "to provide an area to house" the equipment, which it did. The ownership and maintenance of the equipment remained with Superior, as indicated in the contract. This Court does not interpret the plain language to impose a further duty on Chevron to maintain, safeguard, or protect the equipment belonging to Superior. Although it is unfortunate that Superior could not obtain flood insurance coverage for its equipment, it voluntarily agreed to store its equipment at the Empire facility. Indeed, the storage of the equipment at the Empire site benefitted both parties.

Because the policy is not ambiguous, the Court is not obligated to examine extrinsic evidence to ascertain the reasonable expectations of the parties when they entered the contract. The plaintiff has failed to identify any provision of the contract that Chevron allegedly breached, and, therefore, the plaintiff's complaint fails to state a claim for breach of contract against Chevron.

### III.

Superior also alleges in its complaint that Chevron converted the equipment belonging to Superior when Chevron bulldozed the damaged equipment after the hurricane, thereby depriving Superior permanently of the equipment.

The Louisiana Supreme Court defines conversion as:

> The gist of a conversion has been declared to be not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the

> possession of which he is entitled.  A conversion
> consists of an act in derogation of the plaintiff's
> possessory rights, and any wrongful exercise or
> assumption of authority over another's goods, depriving
> him of the possession, permanently or for an indefinite
> time, is a conversion.

Importsales, Inc. v. Lindeman, 92 So.2d 574, 575-76 (La. 1957)(citation omitted); see also Chrysler Credit Corp. v. Whitney Nat'l Bank, 51 F.3d 553, 557 (5th Cir. 1995).  The record does not indicate the level of damage that the Empire facility sustained or whether any equipment, belonging to either Chevron or Superior, survived with any value to be salvaged.  Chevron does not deny the allegation that it bulldozed Superior's equipment without contacting Superior for permission.

Because genuine issues of material fact exist regarding Superior's claim for conversion, the Court DENIES Chevron's motion for summary judgment.  But the Court GRANTS Chevron's motion for summary judgment for Superior's claim for breach of contract.

Accordingly, Chevron's motion for summary judgment is GRANTED in part and DENIED in part.

New Orleans, Louisiana, July 6, 2007.

_____
Martin L.C. Feldman
United States District Judge